## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| Demond Antione White, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:22cv951 (RDA-IDD) |
| | ) | |
| Harold Clarke, | ) | |
| Respondent. | ) | |

MEMORANDUM OPINION

Demond Antione White ("Petitioner" or "White"), a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his September 20, 2019 convictions in Circuit Court of the City of Norfolk for robbery, attempted robbery, two counts of wearing a mask in public, and two counts of use of a firearm in the commission of felony. [Dkt. No. 1]. The Respondent has filed a Rule 5 Answer and a Motion to Dismiss, with supporting briefs and exhibits. [Dkt. Nos. 16-18]. Petitioner exercised his right to file responsive materials to the motion to dismiss pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) and Local Rule 7(K). [Dkt. Nos. 21-29].[1] Accordingly, this matter is now ripe for disposition. For the reasons that follow, the respondent's Motion to Dismiss is granted and the petition is dismissed with prejudice.

### I. Procedural History

Petitioner is detained pursuant to final judgments of the Circuit Court for the City of Norfolk dated September 20, 2019. Following a jury trial, at which White represented himself with standby counsel, White was convicted of robbery, in violation of Code § 18.2-58; attempted

---

[1] White's responses include motions for discovery and production of documents [Dkt. Nos. 23-24], which will be addressed below.

robbery, in violation of Code §§ 18.2-58 and 18.2-26; two counts of wearing a mask in public in violation of Code § 18.2-422; and two counts of use of a firearm in the commission of felony, in violation of Code § 18.2-53.1. In accordance with the jury's verdict, the trial court sentenced him to seventeen years of in prison. *Commonwealth v. White*, Case Nos. CR18001400-00; -01; - 02; -03; -06.

White, by counsel, timely noted an appeal of his convictions. On January 31, 2020, appellate counsel filed a petition for appeal, pursuant to *Anders v. California*, 386 U.S. 738 (1967), and moved to withdraw. Petitioner filed a *pro se* supplemental petition on March 3, 2020. By order entered August 28, 2020, the Court of Appeals determined White's appeal was "wholly frivolous," permitted counsel to withdraw, and denied the petition for appeal. The court found that: Petitioner's assertion that his statutory speedy trial rights had been violated was frivolous; the circuit court did not err in denying his motion to dismiss, which asserted White did not understand the charges against him; White had defaulted his assertion the trial court erred in denying six jury instructions; and that White had defaulted his allegations of error asserting: "contractual error," an alleged *Brady v. Maryland*, 373 U.S. 83 (1963) violation, that the evidence was insufficient to sustain his conviction for attempted robbery, and a claim of ineffective assistance of stand-by counsel. *White v. Commonwealth*, Record No. 1577-19-1, at 153-56 ("CAV"). White did not appeal to the Supreme Court of Virginia.

On May 6, 2021, White filed a petition for a writ of habeas corpus in the Circuit Court of the City of Norfolk, *White v. Clarke*, Case No. CL21005276-00 (hereinafter "Hab."), and raised the following claims:

1) The evidence was insufficient. (Hab. at 903-04).
2) The jury should have been given instructions concerning the DNA evidence. (Hab. at 905-06).

2

3)      The prosecutor allowed officers to testify inconsistently with their preliminary hearing testimony regarding the clothing the suspect was wearing; particularly whether his shirt was gray, black, or dark-colored. And the petitioner was not allowed to present certain evidence at trial to counter the prosecution's evidence. (Hab. at 907-11).

4)      Prosecutorial misconduct leading to a fraud upon the court relating to the inconsistent testimony discussed in Claim 3. (Hab. at 912-13). Ineffective assistance of counsel claims:

   i.     At the suppression motion, trial counsel should have filed suppression motions related to petitioner's police interview and the search warrant; (Hab. at 914).

   ii.    Trial counsel did not offer an alibi defense, subpoena witnesses or information for trial, and raised a sham defense; (Hab. 915-16).

   iii.   Appellate counsel was ineffective for filing an … *Anders* brief.(Hab. at 916).

5)      Willful and wanton misconduct by the prosecutor in concealing the inconsistencies in the police testimony and the execution of the search warrant. (Hab. at 917-10).

6)      Due process violation: unreliable testimony led to the misidentification of the petitioner. (Hab. 920-21).

The court dismissed the habeas petition by final order dated December 1, 2021. Claims 1, 2, 3, a portion of 4 that did not allege ineffective assistance of counsel, 5, and 6 were each dismissed pursuant to the rule of *Slayton v. Parrigan*, 215 Va. 27, 29 (1974). The court found that Claim 4(i) did not state a claim of ineffective assistance of trial counsel under *Strickland v. Washington*, 466 U.S. 668 (1984); Claim 4(ii) did not state a claim of ineffective assistance of trial counsel because petitioner represented himself at trial; and that Claim 4(iii) did not state a claim of ineffective assistance of appellate counsel. (Hab. at 1043-55). White did not file a timely notice of appeal and thereby failed to perfect an appeal to the Supreme Court of Virginia. (Hab. at 1056-57).[2]

---

[2] The notice of appeal was not given to prison authorities until January 1, 2022, and the postmark is the same day, January 11, 2022. The notice of appeal was not received until February 1, 2022. (Hab. at 1056-57). On April 19, 2022, the Clerk of the Supreme Court of Virginia notified the circuit court, White and respondents counsel that the record was being returned to the circuit court "[b]ecause no petition for appeal ha[d] been filed and the time within which to do so ha[d] expired." (Hab. at 1264).

On May 28, 2021, White filed a second state petition for a writ of habeas corpus in the Supreme Court of Virginia alleging substantially the same claims as those raised in his first habeas corpus petition. *White v. Clarke*, Record No. 210598 (hereinafter "VSCT Hab."). The court dismissed the second state habeas petition on March 11, 2022, determining the claims raised by the petitioner had already been adjudicated by the Norfolk Circuit Court. [Dkt. No. 18-4] (VSCT Hab. at 221).[3]

On April 12, 2022, White, *pro se*, filed a "Motion to Vacate, Set Aside, or Correct Sentence" in the Norfolk Circuit Court alleging due process violations and ineffective assistance of counsel. *White v. Clarke*, Case No. CL22004816-00 (hereinafter :MTV"). On July 13, 2022, the circuit court dismissed White's motion, finding it untimely pursuant to Virginia Supreme Court Rule 1:1. [Dkt. No. 18-5] (MTV at 1092-97). White did not appeal this judgment.

## II. The Federal Petition

On August 10, 2022,[4] White filed his § 2254 petition for writ of habeas corpus with this Court. To comply with the Local Rule, White filed an amended petition on September 23, 2022. The amended petition raises the following claims:

Ground 1:   Due Process violation: lack of evidence to support conviction due to petitioner's DNA not being found at the crime scene;

Ground 2:   Due Process violation: there was a likelihood of misidentification given manner of police investigation including lack of DNA;

---

[3] In its March 11, 2022 dismissal order, the Supreme Court of Virginia found that the state habeas petition was filed on May 28, 2021 (VSCT Hab. at 221) and then dismissed the claims pursuant to Virginia Code § 8.01-663, which provides, "[a]ny such judgment entered of record shall be conclusive, unless the same be reversed, except that the petitioner shall not be precluded from bringing the same matter in question in an action for false imprisonment." *See, e.g., Hawks v. Cox*, 211 Va. 91, 175 S.E.2d 271, 273-74 (Va. 1970).

[4] White's original pleading was postmarked on August 10, 2022. Respondent submitted an affidavit from the mailroom at White's institution indicating White placed that pleading in the mail on August 10, 2022. [Dkt. No. 18-6]. *See Lewis v. Richmond City Police Dep't.*, 947 F.2d 733 (4th Cir. 1991) (an incarcerated *pro se* litigant's habeas petition is considered filed when it is delivered to prison officials to be mailed to the court). White has not disputed this date in his responses. Accordingly, the record establishes that his original petition was filed August 10, 2022.

Ground 3:   Due Process violation: Petitioner's wavier of his *Miranda* rights was coerced;

Ground 4:   Ineffective Assistance of Counsel on appeal: counsel failed to raise issues identified by the petitioner and withdrew after filing a brief pursuant to *Anders*; and

Ground 5:   Due Process violation: Suppression of information regarding the identification of the petitioner and of information relating to the search warrant affidavit.

Ground 6:   Ineffective Assistance of Counsel at trial: counsel did not seek to suppress evidence as being obtained in violation of his Fourth Amendment rights because false and perjurious statements were made in the affidavit to obtain a search warrant.

Ground 7:   Due Process violation: Petitioner's due process rights were violated because the state used "perjured" testimony, specifically, petitioner's hoodie was described as "dark" "gray" and "black" at various times.

[Dkt. Nos. 7, 8]. Upon review of the state court records, the federal petition is untimely.

### III. Statute of Limitations

Under the Anti-terrorism Effective Death Penalty Act (AEDPA), a petition for a writ of habeas corpus must be dismissed if filed later than one year after (1) the judgment becomes final; (2) any state-created impediment to filing a petition is removed; (3) the United States Supreme Court recognizes the constitutional right asserted; or (4) the factual predicate of the claim could have been discovered with due diligence. 28 U.S.C. § 2244(d)(1)(A)-(D). This period generally begins on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" and excludes "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(1)(A), (d)(2).

In calculating the one-year period, however, the Court must exclude the time during which properly filed state collateral proceedings pursued by petitioner were pending. *See* 28 U.S.C. § 2244(d)(2); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (determining that the definition of "properly filed" state collateral proceedings, as required by § 2244(d)(2), is based on the applicable

state law as interpreted by state courts). The Supreme Court has emphasized that an untimely state petition is not properly filed. *Pace*, 544 U.S. at 413. To be properly filed, the petition must be delivered in compliance with the applicable laws and rules governing filings, including format and time requirements. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000).

Here, the direct appeal ended thirty days after the Court of Appeals of Virginia affirmed White's convictions on August 28, 2020 because White did not appeal to the Supreme Court of Virginia. Consequently, September 27, 2020 was the date his criminal proceedings ended because his right to file a petition for an appeal to the Supreme Court of Virginia expired. *See Gonzalez v. Thaler*, 565 U.S. 134, 149 (2012) (holding that, under § 2244(d)(1)(A), the judgment becomes final "when the time for pursuing direct review in [the Supreme Court], or in state court, expires").

On May 6, 2021, 221 days later, White filed a petition for writ of habeas corpus in the Norfolk Circuit Court, which was dismissed on December 1, 2021. Petitioner's request for state collateral relief tolled the running of the limitations period while his circuit court habeas petition was pending. *Harris v. Hutchinson*, 209 F.3d 325, 327 (4th Cir. 2000). During the pendency of that proceeding, the petitioner filed another petition for writ of habeas corpus in the Supreme Court of Virginia, which was pending through March 11, 2022. Assuming without deciding that White is entitled to statutory tolling for entirety of the time his two petitions were pending, the federal statute of limitations began running again after the dismissal of his habeas petition in the Supreme Court of Virginia by order dated March 11, 2022. White, however, did not file his federal § 2254 petition until August 10, 2022. Between March 11, 2022 and August 10, 2022, 152 days elapsed. When the 152 days are added to the 221-day period from the end of the direct appeal to the filing of the state habeas, a total of 373 days lapsed. The petition is therefore untimely unless the motion to vacate filed on April 12, 2022 and dismissed on July 13, 2022 tolled the limitations period.

*A. Statutory Tolling*

White argues that even though his motion to vacate was untimely, because it was "pending" the statute of limitations should be tolled. [Dkt. Nos. 26 at 2; 28 at 2]. His argument has no merit. *See Pace*, 544 U.S. at 417 ("time limits, no matter their form, are 'filing' conditions"). Petitioner's motion to vacate did not toll the statute of limitations period because it was dismissed as untimely and therefore was not properly filed. The circuit found White's motion to vacate was barred by Va. Sup. Ct. Rule 1:1. In Virginia, if a post-trial motion is found not to be timely filed and is dismissed pursuant to Rule 1:1, "that motion was not 'properly filed' and it follows that the § 2244(d) one-year limitations period was not tolled during the pendency of that motion and subsequent appeals stemming from denial of the motion." *Hall v. Johnson*, 332 F. Supp. 2d 904, 909 (E.D. Va.), *appeal dismissed*, 115 F. App'x 162 (4th Cir. 2004); *see also Crowley v. Landon*, 780 F.2d 440, 444 (4th Cir. 1985) (noting that Rule 1:1's termination of a trial court of jurisdiction after twenty-one days was "unambiguous"). White's § 2254 petition was filed after the statute of limitations expired, and is barred from review unless he demonstrates some equitable exception.

*B. Equitable Tolling*

To qualify for equitable tolling, a petitioner must demonstrate that (1) he had been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing. *Pace*, 544 U.S. at 418. A petitioner asserting equitable tolling "bears a strong burden to show specific facts" that demonstrate fulfillment of both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (quoting *Brown v. Barrow*, 512 F.3d 12304, 1307 (11th Cir. 2008)). The petitioner generally is obliged to specify the steps he took in diligently pursuing his federal claim. *Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001). In addition, the petitioner must "demonstrate a causal relationship between the extraordinary circumstance on which the claim for

7

equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the circumstances." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000).

White did not complete the section of the § 2254 form petition to explain his untimeliness. [Dkt. No. 7 at 13]. In his responses to the motion to dismiss, the only specific argument he advances on timeliness is that he had a motion to vacate pending from April 12, 2022 until it was dismissed on July 13, 2022. White's claims are largely assertions of error by the trial court and the appellate court. White was present at trial, where he represented himself with standby counsel and participated in his appeal following the withdrawal of counsel. The facts underlying the alleged errors by the trial court were available to him in 2019—indeed the federal petition is nearly identical to the state habeas petitions he filed in 2021, well before the federal statute of limitations expired. The record establishes that his claims could have been brought within the statutory period.

To the extent White may be asserting ignorance of filing requirements and statutes of limitations, his lack of knowledge of the law is not the type of extraordinary circumstance that justifies equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (*pro se* petitioner's ignorance and misconceptions about the operation of the statute of limitations do not justify equitable tolling because they are not extraordinary circumstances beyond his control). Because White has failed to demonstrate that he pursued his rights diligently and that some extraordinary circumstance prevented him from filing in a timely manner, he is not entitled to equitable tolling and this petition must be dismissed. *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008).

*C. Actual Innocence*

The Supreme Court has recognized actual innocence as a basis for overcoming the expiration of the statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (explaining that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations"). "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.'" *Hayes v. Carver*, 922 F.3d 212, 216 (4th Cir. 2019) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 324 (1995)). A gateway claim requires a petitioner to present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The evidence from his trial demonstrates that his convictions were not a miscarriage of justice. The two robberies were committed by a person using the distinct red-painted firearm; the robber wore a bandanna (which was similar to a bandanna recovered at the residence where Petitioner was staying a short time after the robberies); and White, who fled from the police when they announced themselves and told him to stop, admitted moving the handgun when he saw the police outside the residence. Additional evidence from the victims and the investigation provide substantial evidence of White's guilt.

On November 14, 2017, Essence Robinson was working at the Tinee Giant on East Princess Anne Road in Norfolk, Virginia. (6/13/19 Tr. at 116-18). Robinson and her boyfriend Andre Brown were present when a black male entered the store, with a red bandanna covering their face, pointing a red gun at them, and said, "Give me the money." (*Id.* at 120, 124, 126-27). Robinson ran to the backroom and the robber with the red gun left the store. (*Id* at 132). Brown

saw the person with the red bandanna (*id.* at 137; Dkt. No. 30-1, Comm. Ex. 13) and she remembered the gun because the slide on the gun had been painted red. (*Id.* at 151-60). The incident was recorded by a security system. (*Id.* at 138).

On November 17, 2017, Kebal Khanal was working at the Good Times minimarket located in the 2300 block of Sewell's Point Road in Norfolk, Virginia and his girlfriend, Puspa Bhattarai, was present. A person entered the store wearing a red bandanna (*id.* at 179-80; Dkt. No. 30-1, Comm. Ex. 13) over their face and the robber had a gun that was painted red and said, "Give me the money or else I'm going to shoot you," and then the robber shot the gun. The bullet passed in front of Khanal and lodged in the wall behind him. (*Id.* at 163, 166, 171-72, 192-93). Bhattarai handed the robber $1200.00 from the cash register, as well as three packs of cigarettes after he asked for cigarettes. (*Id.* at 175-76). Bhattarai was not sure if the robber wore glasses or not but she was sure the robber was "a black male."(*Id.* at 199). The store's security system recorded the incident.

The police responded to each incident, collected the security video evidence, and recovered the bullet fragment from the wall at the Good Times minimarket. (*Id.* at 203-06). The description of the robber in each case was similar, and the video established that the robber wore the same type of shoes, which had metallic ends on the shoelaces. (*Id.* at 217-18; 6/13/19 Tr. at 465; 6/14/19 Tr. at 526).

On November 29, 2017, the police executed an outstanding warrant on White at 871 West 36th Street, Norfolk, Virginia. When the police approached White, they were wearing vests that indicated they were "Police," they announced themselves by stating, "Stop, Police," and the emergency lights on their police vehicle had been activated. (6/12/19 Tr. at 229). White turned, looked at the officers, and then "took off running." (*Id.*). After White was in custody, the police

obtained and executed a search warrant for the same address. (*Id.* at 218-19; 6/13/19 Tr. at 328). When arrested, White, a black male, was wearing shoes similar to that of the robber, which had laces with metallic ends. (6/13/19 Tr. at 464, 466; Dkt. No. 30-3 at 752, 807). The police recovered a red handgun discovered on a shelf behind a cardboard box in a closet during the search. (6/13/19 Tr. at 232). The handgun was loaded with one round in the chamber and five rounds of ammunition in the magazine. The ammunition was the same as that discovered in a backpack, which also contained articles of clothing. Upon examination of the handgun, it was evident that it had been painted red. (*Id.* at 253-54, 263, 267, 282, 288, 290). Detective Zablan identified a burgundy bandanna that was also recovered from the bedroom floor during the search. (*Id.* at 292).[5]

After being advised of his *Miranda*[6] rights, Petitioner stated that the handgun had been in the backpack and that he had moved it from the backpack to the shelf when he saw the police outside the residence. (*Id.* at 475, 478, 482, 524). Petitioner denied being involved in either robbery. (*Id.* at 480). There were no robberies involving a red handgun after the red handgun was seized during the search. (6/14/19 Tr. at 514-15).

In addition, forensic testing determined that the red handgun recovered during the search fired the bullet that was recovered from the wall at the Good Times minimarket. (6/13/19 Tr. at 372, 376, 378-79). Additional forensic testing, which compared Petitioner's DNA profile from a DNA profile obtained from the bandanna recovered during the search, determined that Petitioner could not be eliminated as a contributor to the DNA profile obtained from the bandanna, although there was more than one person's DNA on the bandanna. (*Id.* at 424-27).[7]

---

[5] The bandanna identified by Robinson and Khanal, which each described as red, was the same bandanna (Comm. Ex. 13) recovered during the execution of the search warrant that the officer described as a "burgundy bandanna." *See, supra* at 9.

[6] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[7] The Certificate of Analysis indicated that the likelihood that White's DNA was a match to the DNA identified on the bandanna was "210 sextillion more probable than a coincidental match to an unrelated African

Even if White's petition was timely, however, he did not exhaust any of his federal claims by properly presenting them to the Supreme Court of Virginia in any proceeding. Accordingly, his claims are simultaneously exhausted and defaulted.

## IV. Exhaustion and Procedural Default

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. *See* 28 U.S.C. § 2254(b); *Granberry v Greer*, 481 U.S. 129 (1987). To exhaust a claim, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A petitioner convicted in Virginia must have presented the same factual and legal claims raised in his § 2254 petition to the Supreme Court of Virginia. *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002); *see, e.g., Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.").

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citation omitted). Importantly, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim." *Id.* (citation omitted).

---

American male." [Dkt. No. 30-4 at 225]. The DNA profile developed from the bandanna was "a mixture of three unknown contributors." [*Id.*].

Finally, exhaustion requires that not only must a claim be exhausted but "'both *the operative facts* and the controlling legal principles'" upon which a petitioner relies must have been exhausted in state court review of his claims as well. *Kasi*, 300 F.3d at 501-02 (emphasis added) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). The requirement that facts be exhausted is an important aspect of exhaustion under AEDPA, which limits federal habeas "review under § 2254(d)(1) … to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *see Muhammad v. Clarke*, No. 1:11cv345, 2012 WL 259869, *4 (E.D. Va. Jan. 26, 2012) (where a petitioner attempts to allege unexhausted facts, the federal court must defer to the state court's finding) (citing *Kasi*, 300 F.3d at 501-02; *Pinholster*, 563 U.S. at 182-83), *appeal dismissed*, 474 F. App'x 979 (4th Cir. 2012). *Pinholster* emphasized "that the record under review is limited to the record in existence at that same time—*i.e., the record before the state court*." *Id.* (emphasis added).[8] The Fourth Circuit found that the reasonableness of a state court decision is evaluated "'in light of the evidence presented in the State court proceeding.'" *Porter v. Zook*, 898 F.3d 408, 443 (4th Cir. 2018) (quoting *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015)).

White did not properly present the claims in his § 2254 petition to the Supreme Court of Virginia in any proceeding. White did not appeal his criminal convictions, the dismissal of his habeas petition by the circuit court, or the denial of his Motion to Vacate by the circuit court to the Supreme Court of Virginia. *See Whitley v. Bair*, 802 F.2d 1487, 1500 (4th Cir. 1986) ("failure to appeal claims disposed of by state habeas trial court constitutes a procedural bar to further federal

---

[8] *Pinholster* explained that

> [w]hat makes the consideration of new evidence strange is not how "different" the task would be, but rather the notion that a state court can be deemed to have unreasonably applied federal law to evidence it did not even know existed. We cannot comprehend how exactly a state court would have any control over its application of law to matters beyond its knowledge.

563 U.S. at 183 n.3.

review of such claims"); *see also Wise v. Williams,* 982 F.2d 142, 146 (4th Cir. 1992) (affirming district court's conclusion that state habeas claim was procedurally defaulted due to prisoner's failure to timely file his notice of appeal). The second state petition for a writ of habeas corpus, which White filed in the Supreme Court of Virginia, did not "fairly present[]" his claims to the Supreme Court of Virginia for purposes of exhaustion because it was raised in "a procedural context in which its merits [would] not be considered." *Castille v. Peoples*, 489 U.S. 346, 351 (1989). To be sure, the record establishes that the Supreme Court of Virginia did not reach the merits of White's second state habeas petition because White had raised those claims in the previous state habeas petition that had been conclusively decided by the Norfolk Circuit Court. The Supreme Court of Virginia dismissed the claims because White had raised those "claims in his first petition for a writ of habeas corpus and the circuit court rejected them, finding them to be non-cognizable in habeas. That judgment is conclusive. Code § 8.01-663." (VSCT Hab. at 221).

Federal courts may not review defaulted claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. *Harris v. Reed*, 489 U.S. 255, 260 (1989). The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991); *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990); *Clanton v. Muncy*, 845 F.2d 1238, 1241-42 (4th Cir. 1988). A court need not consider the issue of prejudice in the absence of cause. *See Kornahrens v. Evatt*, 66 F.3d 1350, 1359 (4th Cir. 1995).

White alleges in his response that the ineffective assistance of his original trial counsel, caused him to proceed *pro se* at trial; and that the same counsel, who was appointed as counsel for his appeal, was ineffective for not raising the "issues he wanted to present in [his] appeal" and that this counsel did not consult with him about the issues that would be raised. [Dkt. No. 29 at 1]. While a claim of ineffective assistance of counsel, in some circumstances, may be sufficient

14

"cause" for a defaulted claim, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), such a claim

of ineffective assistance of counsel supplies the requisite "cause" only where the petitioner raised

the ineffectiveness argument as a cause for the defaulted substantive claim during his state habeas

proceedings. *Powell v. Kelly*, 531 F. Supp. 2d 695, 723 (E.D. Va. 2008), *aff'd*, 562 F.3d 656 (4th

Cir. 2009).

> The requisite ineffective assistance, however, "is itself an independent
> constitutional claim" subject to the requirement of exhaustion in state court and to
> the doctrine of procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)
> (emphasis in original); *id.* at 453 (holding that ineffective assistance claims asserted
> as cause for procedural default of other claims are themselves subject to procedural
> default rule); *see also Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) (noting that
> "the exhaustion doctrine ... generally requires that a claim of ineffective assistance
> be presented to the state courts as an independent claim before it may be used to
> establish cause for a procedural default").

*Swisher v. True*, 325 F.3d 225, 231 (4th Cir. 2003).[9] White, however, did not appeal the circuit

court's dismissal of his state habeas ineffective assistance of counsel claims to the Supreme Court

of Virginia, and thus he cannot establish ineffective assistance of counsel as cause to excuse his

defaults.

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Court recognized a narrow exception for

defaulted claims of ineffective assistance of counsel in a state, such as Virginia, where a prisoner

is not allowed to raise an ineffective assistance of counsel claim on direct appeal, holding, "a

prisoner may establish cause for a default of an ineffective-assistance [of trial counsel] claim ...

where the state courts did not appoint counsel in the initial-review collateral proceeding ... [or]

---

[9] To the extent either of his two § 2254 ineffective assistance of counsel claims are construed as raising an unexhausted ineffective assistance of counsel claim, such a claim would be defaulted because it would be barred under the state of limitations or barred by the state successive writ statute. *See Pearson v. Clarke*, No. 1:21cv1270, 2022 WL 7031653, at *4 (E.D. Va. Oct. 12, 2022), *appeal dismissed*, No. 22-7277, 2023 WL 3073563 (4th Cir. Apr. 25, 2023) (noting unexhausted ineffective assistance of counsel claim "would be barred either under the successive writ statute in Virginia, Va. Code § 8.01-654(B)(2), if it was raised by a petition for a writ of habeas corpus in state court; or by Virginia's statute of limitations for habeas petitions, Va. Code § 8.01-654(A)(2)").

where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*." *Id.* at 15. In addition to establishing cause, a prisoner must "demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one ... that the claim has some merit." *Id.*; *see also Trevino v. Thaler*, 569 U.S. 413, 423 (2013). White's allegations of ineffective assistance of counsel against his counsel are not substantial claims under *Martinez*.

In federal habeas claim 4, White argues that appellate counsel was ineffective for not raising the issues he wanted to raise on appeal and for filing a petition for appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967). *Martinez*, however, is inapplicable to claims of ineffective assistance of appellate counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (declining to extend the holding of *Martinez* to defaulted claims of ineffective assistance of appellate counsel); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012) ("*Martinez* applies only to 'a prisoner's procedural default of a claim of ineffective assistance at trial,' not to claims of deficient performance by appellate counsel") (quoting *Martinez*, 566 U.S. at 8)); *Gaither v. Zook*, No. 3:16cv64, 2017 WL 562419, *4 (E.D. Va. Jan. 18, 2017) ("The majority of federal circuit courts have found that the explicit language of *Martinez* apples to a prisoner's default of a claim of ineffective assistance of trial counsel only") (citing decisions from the Fifth, Sixth, Eighth, Tenth, Eleventh); *see, e.g., Moseley v. Clarke*, 3:19cv40, 2019 WL 4231219, *7, n.6 (E.D. Va. Sept. 5, 2019) ("To the extent that Moseley faults appellate counsel for the default of his claim, the explicit language of *Martinez* applies to an inmate's default of a claim of ineffective assistance of trial counsel only .... Thus, the ineffective assistance of appellate counsel fails to serve as the cause for the default of this claim") (citation omitted), *appealed dismissed*, 791 F. App'x 428 (4th Cir.), *cert.*

*denied*, 141 S. Ct. 301 (2020). Consequently, *Martinez* does not provide cause to excuse White's default of Claim 4.

White's federal habeas claim 6, that counsel was ineffective for not filing a motion to suppress the results of the search warrant, is without merit. White removed his counsel and proceeded *pro se* and the circuit court heard and denied White's motion to suppress before trial.

The record establishes that retained counsel substituted in for a public defender during the proceedings in general district court in March 2018. (CCT at 82-83) (discovery motion). White was indicted on July 5, 2018, (*id.* at 99-107), and on July 30, 2018, after White was arraigned and pleaded not guilty, the matter was set for trial by jury on December 3, 2018. (*Id.* at 113-14). On October 5, 2018, White proceeding *pro se*, filed a motion for counsel to withdraw and requested that he be allowed to proceed "alone." (*Id.* at 115-16). White noted in his motion that his counsel had refused to file a suppression motion. In response his retained counsel then sought leave to withdraw. (*Id.* at 117-19).Counsel was allowed leave to withdraw on February 20, 2019, and White had several months before the new trial date in June to file a motion to suppress.

On May 30, 2019, White, proceeding *pro se*, filed a motion to suppress asserting a *Brady* violation, which included allegations of falsified documents and a missing recording. (*Id.* at 240).[10] On June 11, 2019 the court heard and denied White's motion to suppress. (*Id.* at 300-01). During the hearing on June 11, 2019, the court heard White's allegations that the prosecution/police had been "falsifying documents," including "giving false affidavits, contradictory, in obtaining the

---

[10] On December 3, 2018, the trial was continued to March 25, 2019, and the indictments charging White with possession of a firearm after having been convicted of a felony were severed. (*Id.* at 137-38). On February 20, 2019, White, *pro se*, filed a motion, styled Motion to Squash and Dismiss, alleging evidence had been illegally obtained. (*Id.* at *153*-56). On that same date, White's counsel was allowed to withdraw as counsel, and the circuit court appointed her stand-by counsel. (*Id.* at 157). Thereafter, on March 22, 2019, White again filed a motion styled Motion to Quash and Dismiss, alleging evidence was illegally seized which the court heard that same day, and denied in an order dated March 22, 2019. (*Id.* at 227-28). On March 26, 2019, the court granted White's motion for a continuance to June 12, 2019. (*Id.* at 231).

search warrant." (6/11/19 Tr. at 12). The court listened to White explain his concerns about the search warrants, the affidavits, and the missing recording (which was not missing, the recording equipment malfunctioned), and then denied his motion to suppress. (*Id.* at 12-23, 36-38, 49, 52).[11] The circuit court found no grounds to suppress the search warrants or the statements made after White waived his *Miranda* rights. The court, however, advised White that the points he raised could be used in cross-examination of the prosecution's witnesses.

On appeal, appellate counsel did not raise the denial of the motion to suppress as an assignment of error, and filed a motion to withdraw and for leave for White to file a *pro se* supplemental petition for appeal, which was granted. (CAV at 35, 67). White filed a supplemental petition for appeal. After reviewing counsel's *Anders*' brief and the supplemental petition for appeal, counsel was granted leave to withdraw. (*Id.* at 157). With regard to the supplemental petition, the appellate court ruled his supplemental petition did not contain "assignments of error challenging specific rulings made by the trial court." (CAV at 157) (citing Va. Sup. Ct. Rule 5A:12(c)(1)(i)). Thereafter, White failed to perfect his appeal to the Supreme Court of Virginia.[12]

---

[11] White relied on his interpretation of the two search warrants and sought an explanation as to why there were two search warrants. The prosecutor explained that the first search warrant was issued to locate White in order to serve an outstanding arrest warrant, and the second was issued to search the premises for evidence. The discrepancy over the clothing that was seized was cleared up at trial because the online inventory form had incorrectly auto populated the inventory form documenting where the items were seized with an address from a previous form in the same online file. (6/14/19 Tr. at 502-09).

[12] Any claim of ineffective assistance of appellate counsel would be of no merit. Matters of appellate strategy fall within the discretion of the attorney. *See Smith v. Murray*, 477 U.S. 527, 536 (1986). "In deciding which issues to raise on appeal, [counsel] is entitled to the presumption that he decided which issues were most likely to afford relief," *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993), and "[e]ffective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit." *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008). Indeed, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith*, 477 U.S. at 536 (internal quotations and citations omitted). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986). "The ineffective assistance inquiry therefore requires a court to compare the strength of an issue not raised on direct appeal ... with the strength of arguments that were raised." *United States v. Allmendinger*, 894 F.3d 121, 126 (4th Cir. 2018). White fails to demonstrate that his appellate counsel's decision not to raise the denial of the suppression motion on appeal was unreasonable or that even if appellate counsel had raised the claim that the outcome of the appeal would have been any different.

It is evident that a motion to suppress was raised at trial and found to be without merit. The merits of that motion aside, the reason a substantive claim regarding the motion to suppress is not properly before this Court is not due to ineffective assistance of trial counsel because trial counsel withdrew *California*, 422 U.S. 806, 834 n.46 (1975) ("a defendant who elects to represent himself cannot … complain that the quality of his own defense amounted to a denial of effective assistance of counsel"). This is approbation and retrobation at its finest point. To be sure, on appeal, appellate counsel was allowed to withdraw by the Court of Appeals when it denied White's appeal. Thereafter, White failed to perfect his appeal to the Supreme Court of Virginia.

White's petition is untimely, and even if it were timely he defaulted his claims and has not established the necessary cause to excuse his default.

****

Petitioner has also filed motions for discovery which seek the production of documents from the prosecution and his former trial and appellate counsel. [Dkt. Nos. 23, 24]. As is evident from the discussion above, White's claims are untimely and defaulted, and he has neither shown he is entitled to either tolling nor established cause and prejudice to excuse his defaults. Under such circumstances, discovery is not appropriate. *See Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999).

## IV. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 16] is granted, Petitioner's motions for discovery [Dkt. Nos. 23, 24] are denied, and this petition is dismissed with prejudice. An appropriate Order and judgment shall issue.[13]

Entered this 6th day of June 2023.

Alexandria, Virginia

/s/

Rossie D. Alston, Jr.
United States District Judge

---

[13] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.